(19 App. Div. 403.)

GILBERT et al. v. WARREN et al.

(Supreme Court, Appellate Division, First Department. July 2, 1897.)

USURIOUS CONTRACT.

One C., upon retiring from a firm of which he was a member, made an agreement with his successors that the money standing to his credit should remain with the new firm as a loan account, drawing 6 per cent. interest; that if C. should loan the firm any 'securities to use as collateral, he would make no charge for the use of them; that the new firm might call upon him to increase his loan account to $50,000; and that, in consideration of the agreement, he should receive $4,000 per year as compensation. C. rendered no services for the firm. *Held*, that the agreement was usurious, and the payment of the $4,000 per year could not be enforced.

Appeal from trial term.

Action by Alexander Gilbert and another, as executors of William R. Clarkson, deceased, against Charles W. Warren and another. From a judgment entered on the verdict of the jury under direction of the court, defendants appeal. Affirmed on condition.

Argued before VAN BRUNT, P. J., and WILLIAMS, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

Ira D. Warren, for appellants.
John S. Durand, for respondents.

INGRAHAM, J. We think the complaint states but one cause of action, which is to recover the balance due upon an account between the plaintiffs' testator and the defendants, which account, under the allegations of the complaint, became an account stated. In answer to this complaint, the defendants, while denying that the account was stated as therein alleged, or that the account annexed to the complaint is a true copy of the account between the plaintiffs' testator and the defendants in the testator's lifetime, admit that the said account annexed to the complaint contains a true statement of the deposits, payments, credits, and charges since the death of the plaintiffs' testator; and for a defense to the cause of action allege that the transactions between the plaintiffs' testator and the defendants consisted of loans of money from the plaintiffs' testator to the defendants under a usurious contract or agreement set forth in the answer, upon which was paid or credited to the said plaintiffs' testator's account the sum of $22,120.93 over and above the legal rate of interest at 6 per cent. per annum. It was proved upon the trial that prior to January 1, 1883, Mr. Clarkson, the plaintiffs' testator, and the defendants were co-partners in business, and that on that day Mr. Clarkson retired from the firm, the

defendants continuing the business under the old firm name until April 10, 1889, when a notice of the dissolution of the firm was published, and subsequently the business was continued by the defendants under the firm name of Warren & Stratton. On the 1st day of January, 1883, a contract was made between the defendants and Mr. Clarkson, by which it was agreed that from that date Mr. Clarkson was not a partner in the firm; that the money standing to the credit of W. R. Clarkson with the succeeding firm was a loan account, and should draw interest at 6 per cent.; that, should Mr. Clarkson loan said firm securities to be hypothecated for loans, no charge was to be made for the use of them, the firm to pay the loans and interest, and return said securities to Clarkson; that in lieu of borrowing money on Clarkson's securities, Warren & Stratton had a right to call on Clarkson to make his loan account $50,000, to draw interest as above; and that in consideration of such agreement Clarkson should receive $4,000 per year as compensation. Subsequent to January 1, 1883, there was a running account between Clarkson and the firm, Clarkson being credited at the end of each year with interest upon his account at the rate of 6 per cent. per annum, and also being credited upon the account with various sums of extra interest, amounting, from the date of such agreement down to the time of the death of Clarkson, in the aggregate to $20,973.73, making due to Clarkson at that time, April 2, 1895 (less this sum of extra interest or compensation, or whatever it may be called, due from the defendants to Clarkson's estate), $7,331.39. The court directed a verdict for the plaintiffs for the full amount appearing on the account as due by the defendants, namely, $30,967.20. Counsel for the defendants asked to submit to the jury the question as to whether this agreement is an absolute contract for the taking of more than 6 per cent. for the use and forbearance of money, and also as to whether there was any consideration for the credit of this extra interest or compensation. That the court refused, saying: "I think that the agreement is good, and that the $4,000 was the right of this dead man to have each year, and so far as this proof shows, it was a good bargain for him." To that the defendants excepted.

Leaving out the agreement for this extra interest or compensation, I think a good cause of action was alleged and proved for the balance due to the plaintiffs of $7,331.39. The question is whether or not, under the evidence, this contract, and the credit by the defendants of this extra interest under it, created any liability upon the defendants to pay the amount thus credited to Clarkson or his personal representatives. That this was the agreement under which this account was kept, and the disputed credits made, appears from the testimony of the bookkeeper of the defendants, who testifies that this agreement copied in a book of Clarkson's, in Clarkson's handwriting, was shown to him (the bookkeeper) as an agreement between Clarkson and the defendants, and that the bookkeeper spoke to Mr. Stratton, one of the defendants, about it, and he said it was all right. That evidence was sufficient to show that this was the contract between Clarkson and the defendants, under which the business was done, and the account was kept. Now, it is quite clear that this

agreement by which Clarkson was to receive $4,000 a year was, in substance, an agreement to pay that amount, in addition to the legal interest, for the loan by Clarkson to the firm of the amount of money standing to Clarkson's credit upon the books of the firm, including the right of the defendants to call upon Clarkson to increase that account to $50,000, so that his loan to the firm should be that amount. In the agreement there is no obligation of Clarkson's to loan securities to the firm to be hypothecated for loans. The provision simply is that, should Clarkson loan such securities, he should make no charge to the firm for their use. It does not appear that any part of this extra interest was paid to Clarkson. He was simply credited upon the books of the firm with an amount which varied in each year, but which would be fixed in each year between Mr. Clarkson and the bookkeeper when the account for the year was made up. There is no evidence to show that Clarkson performed any services for the firm, unless it is an entry in a book that in 1891 he loaned to them 100 shares of "S. P. Preferred." There is no evidence, however, as to what that loan was for, and it is not claimed that this stock was not returned to Clarkson. Upon the evidence as it stands, we do not think there was any evidence to justify a recovery of this extra interest. It clearly appears that the amount was credited in pursuance of this agreement, which was an agreement to pay to Clarkson a compensation of $4,000 for his loaning to the firm the amount standing to his credit upon its books, with an agreement by him to authorize the firm to call upon him to make up the loan account to $50,000. This would be void as an agreement to pay for the use of money more than 6 per cent. per annum, and could not be enforced; and a credit in pursuance of this illegal agreement would certainly impose no liability upon the defendants. In Browne v. Vredenburgh, 43 N. Y. 197, it was said: "When a lender stipulates for a contingent benefit beyond the legal rate of interest, and has the right to demand the repayment of the principal sum with the legal interest thereon, in any event the contract is void." This agreement being void, the parties are left to their rights upon the account between Clarkson and the firm; and it was conceded and proved upon the trial that, excluding this charge for extra interest or compensation for the loan of the money, or agreement to loan the money, the amount due to the plaintiffs was the amount, before stated, of $7,331.39, with interest from April 2, 1895. For that amount the plaintiffs were entitled to judgment.

We think, therefore, that the judgment should be reversed, and a new trial ordered, unless the plaintiffs stipulate to reduce the amount of the recovery to that sum, in which case the judgment as modified will be affirmed, without costs to either party upon this appeal. If the plaintiffs should decline to make such stipulation, then the judgment is reversed, and a new trial ordered, with costs to the appellants to abide the event. All concur.